# United States Court of Appeals
## For the First Circuit

---

No. 06-2371

JOSEPH TETI,

Petitioner, Appellant,

v.

JAMES BENDER,
ACTING COMMISSIONER, MASSACHUSETTS DEPARTMENT OF CORRECTION,

Respondent, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

---

Before

Torruella, Circuit Judge,
Campbell, Senior Circuit Judge,
and Lynch, Circuit Judge.

---

Rosemary Curran Scapicchio for petitioner.
Eva M. Badway, Assistant Attorney General, with whom Martha Coakley, Attorney General, was on brief, for respondent.

---

November 8, 2007

---

**LYNCH**, **Circuit Judge**.  In this opinion we address some issues new to this circuit about practice under the federal habeas corpus statute, 28 U.S.C. § 2254.  Joseph Teti appeals from the denial of his federal petition for habeas corpus relief.[1]  The primary question in this appeal is whether the federal district court erred in applying the presumption of correctness under 28 U.S.C. § 2254(e)(1) to the state appellate court's findings of facts and in denying discovery and an evidentiary hearing.

Substantively, Teti argues that the state court erred in denying his claim that he had received ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights because, inter alia, his original defense attorney Bradford Keene had an actual conflict of interest.

We affirm the denial of habeas corpus relief by the district court.

I.

We describe the facts as they appear from the state court record.  Teti was convicted in Massachusetts Superior Court in April 1999 on charges stemming from two cocaine trafficking incidents in 1996.  See Mass. Gen. Laws ch. 94C § 32E(b)(4).  As he had provided cocaine to an undercover agent, Teti's primary defense

---

[1]    Pursuant to Fed. R. App. P. 43(c)(2), Acting Commissioner James Bender has been substituted for former Commissioner Kathleen Dennehy.

was entrapment.  Commonwealth v. Teti, 801 N.E.2d 279, 282 (Mass. App. Ct. 2004).  He testified that he was an addict and had been pressured by the agent to make the sale.  Id.

On the third day of Teti's four-day trial the prosecutor raised an issue of possible conflict: that defense attorney Bradford Keene had also represented a witness hostile to Teti.  Id. at 283.  Teti originally hired attorney Keene in May 1998 but replaced him with attorney John McBride in January 1999.  Id. at 282.  After forwarding his file on Teti to McBride, Keene was no longer involved in the case, although he never formally withdrew his appearance and he sat at the defense counsel table during Teti's trial.  Id. at 282-83 & n.6.  Sometime around April 1998, a year before Teti's trial, Keene had represented a man named Leo Lobello in some limited matters.  Lobello, a convicted federal felon, was the informant who had introduced Teti to the undercover agent who bought the cocaine from Teti.  Id. at 282.  Keene insisted, however, that he did not know Lobello was the informant in Teti's case until a week before Teti's trial.  Id. at 285.

McBride, who did know as early as February 1999 that Lobello was the informant, had called Lobello as a hostile witness in the vain hopes that Lobello would bolster the entrapment defense by demonstrating that Teti was not predisposed to sell cocaine and by appearing himself to be "the instigator of the drug

-3-

transactions, as well as a reprobate and liar, testifying to curry favor with the Federal authorities," id. at 282.

Upon hearing the prosecutor's concern about a potential conflict, the court immediately questioned both Keene and McBride. That questioning, which has been the only hearing on this issue, underlies the description of the facts by the Massachusetts Appeals Court ("MAC") discussed below. Initially, the state trial judge stated her impression that Keene had a conflict of interest; she required him to withdraw, but allowed the trial to continue. The jury convicted Teti, and he was sentenced to fifteen years' imprisonment.

Two and a half years later, Teti moved for a new trial and, on denial of the new trial motion, moved for reconsideration. That motion was also denied. The same state judge who tried the case, in denying the motion for a new trial, concluded that contrary to her initial impression, there was no actual conflict of interest and no showing that any prejudice had resulted, even if there had been a conflict. Because Massachusetts law largely leaves the decision to grant an evidentiary hearing on a new trial motion to the sound discretion of the trial judge, and because Teti had not presented any substantial question of fact warranting an evidentiary hearing, the state judge declined to grant one. See Mass. R. Crim. P. 30(c)(3); Commonwealth v. Stewart, 418 N.E.2d 1219, 1222-23 (Mass. 1981).

-4-

The MAC in 2004 affirmed the conviction as well as the denial of Teti's motion for a new trial. The MAC rejected Teti's claims that Keene had an actual conflict of interest in violation of Teti's federal and state constitutional rights, Teti, 801 N.E.2d at 284; that Keene's actions had caused Teti any prejudice, making it irrelevant whether Keene had a potential conflict of interest, id. at 286; and that Teti had been denied his right to effective assistance of counsel under the federal and state constitutions for other reasons, id. at 286-89

The MAC made certain key findings of fact, which the federal habeas court later presumed were correct: (1) that, contrary to what the prosecutor had initially believed, Keene had not represented Lobello in seeking a Rule 35(b) motion in federal court to reduce Lobello's federal sentence, id. at 283, 285 n.10;[2] (2) that Keene's representation of Lobello was fully in the past and was limited to a few, unanswered phone calls to a South Carolina prison facility approximately one year before Teti's trial in an effort to have Lobello transferred to another facility, and that Keene had never spoken to or met Lobello, id. at 284-85; (3) that Keene was not aware that Lobello was the informant in Teti's case until one week before trial -- "a point by which [Keene's]

---

[2]    Rule 35(b) allows the prosecutor to move for a reduced sentence based on the defendant's "substantial assistance in investigating or prosecuting another person" after the defendant was sentenced.  Fed. R. Crim. P. 35(b)(1)(A).

activities on Lobello's behalf had long since ended," id. at 285; (4) that Keene did not participate in the preparation of Teti's case and that his "involvement with the trial was essentially nonexistent," id. at 286; and (5) that McBride learned of Keene's representation of Lobello only on the third day of Teti's trial, id. at 287. Based on these factual determinations, the MAC concluded that Teti failed to establish the existence of an actual conflict of interest. Id. at 285.

The MAC then considered whether apart from an actual conflict, Teti's counsel had a potential or, as state law phrases it, a "tenuous" conflict. It determined that, whether or not there had been a conflict, there was no prejudice in any event. Id. at 286. As the MAC sensibly reasoned, Keene's participation in the trial preparation and the trial itself was de minimis. Further, any privileged information that Keene did have would not have harmed Teti, as "[i]t would have been to the defendant's benefit for McBride to know more about Lobello, a hostile witness." Id.

Teti had also presented to the MAC a claim of ineffective assistance by McBride, based on several alleged deficiencies. Teti argued that McBride was ineffective in failing to investigate Keene's potential conflicts and to tell Teti about Keene's prior representation of Lobello, but the MAC held there was no ineffectiveness and no prejudice. Id. at 287. The MAC also noted that when the trial judge had questioned Teti about Keene's alleged

-6-

conflict, Teti said he was "quite satisfied" with McBride's representation. Id. The MAC, accordingly, rejected Teti's assertion that had he been informed more fully of the conflict, he would have insisted on new counsel. Id.

Teti also argued that McBride was ineffective for failing to move to sever the indictments against him; for introducing evidence of additional, uncharged drug transactions; and for promising in his opening statement but then not providing testimony about the effects of Teti's psychological and drug dependency problems on his state of mind. The MAC concluded that none of these actions constituted ineffective assistance. See id. at 286-89.

The Supreme Judicial Court denied further appellate review. Commonwealth v. Teti, 805 N.E.2d 44 (Mass. 2004).

II.

In February 2005, Teti filed a petition for habeas corpus in federal court under 28 U.S.C. § 2254, raising the same arguments he had made to the MAC.

In an able opinion, the district court denied Teti's requests for discovery and an evidentiary hearing and denied habeas relief. The court applied the statutory presumption of correctness to the state court's factual determinations and viewed the claims actually ruled upon by the MAC through the deferential lens of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L.

-7-

No. 104-132, 110 Stat. 1214 (1996).  See 28 U.S.C. § 2254(d), (e)(1).

The district court held that the state court holdings -- that there was neither an actual conflict nor any prejudice -- were not an unreasonable application of federal law under AEDPA. See 28 U.S.C. § 2254(d)(1).  Under federal law, an ineffective assistance of counsel claim requires demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984).  If, however, a defendant can show that his attorney "actively represented conflicting interests" in breach of the attorney's duty of loyalty, and if the defendant can show that this "actual" conflict of interest "adversely affected [the] lawyer's performance," then the stricter prejudice showing required by Strickland does not apply.  Id. at 692 (quoting Cuyler v. Sullivan, 446 U.S. 335, 348, 350 (1980)) (internal quotation marks omitted); see also Allison v. Ficco, 388 F.3d 367, 370 (1st Cir. 2004).  In Mickens v. Taylor, 535 U.S. 162 (2002), the Supreme Court emphasized that an actual conflict of interest does not result in an automatic reversal; in almost all cases, some showing of an adverse effect is still required.  Id. at 171, 173-74. Lesser ("potential") conflicts of interest can also be the basis of an ineffective assistance claim, but the more stringent prejudice prong of Strickland then applies.

Although the MAC had relied on state law in concluding there was no actual conflict, the district court noted that state law is more favorable than federal law to the defendant on this issue because under state law, if there were an actual conflict of interest, that conflict would result in automatic reversal regardless of whether any prejudice could be shown. See Commonwealth v. Croken, 733 N.E.2d 1005, 1010 (Mass. 2000). For habeas purposes, where state law is explicitly more favorable to defendants than the federal standard, "we will presume the federal law adjudication to be subsumed within the state law adjudication." McCambridge v. Hall, 303 F.3d 24, 35 (1st Cir. 2002); see also Commonwealth v. Shraiar, 489 N.E.2d 689, 692 n.3 (Mass. 1986) (noting that the state constitutional standard on this issue is more protective of defendant's interests than the federal constitutional standard).

As for Teti's claim that McBride shared Keene's conflict of interest, the district court determined that the MAC had not adjudicated that claim on the merits, even though Teti had presented it to the court; it thus reviewed the claim de novo instead of applying § 2254(d)(1)'s highly deferential standard. See DiBenedetto v. Hall, 272 F.3d 1, 6-7 & n.1 (1st Cir. 2001); Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001). Again utilizing the presumption that the state court's factual findings were correct, the district court concluded that attorney McBride

had no conflict and that Teti could not establish any prejudice that would have resulted even if a conflict had existed. Finally, the court found no basis for habeas relief in the state court's rejection of the remaining ineffective assistance claims.

The federal habeas court denied a later motion to amend or to alter its findings. It granted a certificate of appealability sua sponte regarding issues related to the effectiveness of Teti's counsel.

In addressing these issues, we recite only so much of the case and underlying facts as needed for analysis of the denial of federal habeas relief.

### III.

We review the district court's legal conclusions de novo; further, "[w]hen the district court undertakes no independent factfinding in a habeas case, we are effectively in the same position as the district court vis-à-vis the state court record," so we review the district court's factual conclusions de novo as well. Pike v. Guarino, 492 F.3d 61, 68 (1st Cir. 2007), petition for cert. filed, __ U.S.L.W. ____ (U.S. Sept. 28, 2007) (No. 07-6854).

### A.      Deference Under § 2254(d)

Under AEDPA, our review of state court legal and factual determinations is highly deferential. When a petitioner presses a claim that was adjudicated on the merits in state court, federal

habeas courts must defer to the state court determination unless it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d) applies to Teti's claim that Keene provided ineffective assistance of counsel due to an actual or potential conflict of interest because the MAC adjudicated that claim on the merits. A matter is "adjudicated on the merits" if there is a "decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001). Contrary to Teti's argument, § 2254(d) applies regardless of the procedures employed or the decision reached by the state court, as long as a substantive decision was reached; the adequacy of the procedures and of the decision are addressed through the lens of § 2254(d), not as a threshold matter. See, e.g., Lambert v. Blodgett, 393 F.3d 943, 966-69 (9th Cir. 2004) (no procedural requisites before § 2254(d) applies); Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1254 (11th Cir. 2002) (§ 2254(d) applies equally to summary dispositions); Valdez v. Cockrell, 274 F.3d 941, 950 (5th Cir.

2001); Bell v. Jarvis, 236 F.3d 149, 158-60 (4th Cir. 2000) (en banc); Harris v. Stovall, 212 F.3d 940, 943 (6th Cir. 2000); Aycox v. Lytle, 196 F.3d 1174, 1177-78 (10th Cir. 1999).

Since an ineffective assistance of counsel claim is a mixed question of law and fact, Strickland, 466 U.S. at 698; Scarpa v. DuBois, 38 F.3d 1, 9 (1st Cir. 1994), Teti cannot be granted relief unless the MAC's decision was an "unreasonable application of[] clearly established Federal law," Terry Williams v. Taylor, 529 U.S. 362, 409 (2000) (mixed questions are reviewed under § 2254(d)(1)'s "unreasonable application" clause). A decision can still be reasonable even if the reviewing court thinks it is wrong; "unreasonable" here means something more than incorrect or erroneous. Id. at 411.

Based on the facts as described by the MAC, it was not unreasonable for the MAC to conclude that Keene's representation was not constitutionally deficient. Even assuming that Keene's representation of Lobello and Teti overlapped for some period of time and even assuming that Keene was actively engaged in Teti's trial, Keene had stopped representing Lobello a year before the trial and long before he knew that Lobello was the informant in Teti's case. Further, the MAC found that Keene's representation of Lobello was very limited and would not have related in any way to Teti's case. Based on these facts, there were no competing loyalties and no possible detrimental effect on Teti's

-12-

representation.  To press this claim, then, Teti must challenge the factfinding on which the MAC's conclusion rested.  We turn to § 2254(e).

Our mode of analysis does not suggest, however, that habeas courts should always consider the reasonableness of the state court's determination under § 2254(d) before considering the validity of the state court factfinding under § 2254(e).  To suggest a set order of analysis would unnecessarily constrain habeas courts.  Accord Lambert v. Blackwell, 387 F.3d 210, 236 n.19 (3d Cir. 2004) (acknowledging that different circuits have suggested different orders of analysis and declining to adopt a rigid approach).  Others disagree.  See 1 Hertz & Liebman, Federal Habeas Corpus Practice and Procedure § 20.2c (5th ed. 2005) (concluding that courts should apply § 2254(d)(2)'s reasonableness review before applying § 2254(e)(1)).

B.        Deference Under § 2254(e)

Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct."  The petitioner bears the burden of overcoming that presumption by providing "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

The relationship between § 2254(d)(2) and § 2254(e)(1), both of which apply to state court fact determinations, has caused some confusion.  The Supreme Court has suggested that § 2254(e)(1) applies to "determinations of factual issues, rather than

decisions," while § 2254(d)(2) "applies to the granting of habeas relief" itself.  <u>Miller-El</u> v. <u>Cockrell</u>, 537 U.S. 322, 341-42 (2003).    That  is,  under  this  approach,  §  2254(d)(2)'s reasonableness standard would apply to the final decision reached by the state court on a determinative factual question, while § 2254(e)(1)'s presumption of correctness would apply to the individual factfindings, which might underlie the state court's final decision or which might be determinative of new legal issues considered by the habeas court.  <u>See, e.g.,</u> <u>Blackwell</u>, 387 F.3d at 235 ("[Section] 2254(d)(2)'s reasonableness determination turns on a consideration of the totality of the 'evidence presented in the state-court  proceeding,'  while  §  2254(e)(1)  contemplates  a challenge to the state court's individual factual determinations . . . .") (quoting 28 U.S.C. § 2254(d)(2)); <u>Valdez</u>, 274 F.3d at 951 n.17; <u>cf.</u> <u>Coombs</u> v. <u>State of Maine</u>, 202 F.3d 14, 18 (1st Cir. 2000) (suggesting but not explicating this distinction).

This question has not yet been definitively resolved, nor do we attempt our own resolution here.[3]  Since <u>Miller-El</u>, the

_____

[3]    The  Ninth  Circuit,  for  example,  draws  a  slightly different distinction than the one described above.  Under that court's approach, § 2254(d)(2) applies when the petitioner argues that the state court drew unreasonable conclusions based on the evidence already in the record; § 2254(e)(1) applies, on the other hand, when the petitioner wishes to bring in new evidence to challenge the facts found by the state court.  <u>See, e.g.,</u> <u>Blodgett</u>, 393 F.3d at 972, 978; <u>Taylor</u> v. <u>Maddox</u>, 366 F.3d 992, 999-1000 (9th Cir. 2004).
        Professors Hertz and Liebman would apply the provisions sequentially: under their approach, courts should consider first

Supreme Court has not further clarified this issue. See Rice v. Collins, 546 U.S. 333, 338-39 (2006). As the Third Circuit noted in Blackwell, "[d]espite the Supreme Court's pronouncements in Miller-El and Wiggins [v. Smith, 539 U.S. 510 (2003)], a comprehensive interpretation of AEDPA's factual review scheme has yet to emerge from the federal courts. Specifically, the relationship between the standards enunciated in § 2254(d)(2) and § 2254(e)(1) remains unclear." 387 F.3d at 235; see also Blodgett, 393 F.3d at 971 & n.19; R. Fallon et al., Hart & Wechsler's The Federal Courts and the Federal System 1355 (5th ed. 2003); 17B Wright et al., Federal Practice and Procedure: Jurisdiction § 4265.2 (3d ed. 2007).

For now we follow the Supreme Court's lead in Miller-El and apply § 2254(e)(1) to the MAC's individual factfindings. The decision to do so is not determinative, however, for not only do both provisions "express the same fundamental principle of deference to state court findings," Blackwell, 387 F.3d at 235, but were we to apply § 2254(d)(2), we would also find the MAC's factual conclusions to be not unreasonable in light of the record before it.

---

whether a state court's factfindings are reasonable under § 2254(d)(2), and if they are, only then should the courts apply § 2254(e)(1)'s presumption of correctness. 1 Hertz & Liebman § 20.2c.

-15-

1. <u>Presumption of Correctness Under § 2254(e)(1)</u>

The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." <u>Norton</u> v. <u>Spencer</u>, 351 F.3d 1, 6 (1st Cir. 2003) (quoting <u>Sumner</u> v. <u>Mata</u>, 455 U.S. 591, 592-93 (1982)) (internal quotation marks omitted). Contrary to Teti's arguments, it is for the habeas petitioner to provide the clear and convincing evidence that can overcome that presumption of correctness.

There is some disagreement about whether the presumption of correctness always applies or if there are instead certain procedural prerequisites. <u>See, e.g.</u>, <u>Mayes</u> v. <u>Gibson</u>, 210 F.3d 1284, 1289 (10th Cir. 2000) (if there was no "full, fair, and adequate hearing in the state court," the presumption of correctness does not apply); <u>cf.</u> <u>Taylor</u> v. <u>Maddox</u>, 366 F.3d 992, 1001 (9th Cir. 2004) ("If . . . a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an 'unreasonable determination' of the facts [under § 2254(d)(2)]."); 1 Hertz & Liebman § 20.2c (§ 2254(d)(2)'s reasonableness standard applies to both the process and the substance of state court factfindings).

While the policy arguments underlying these conclusions are reasonable, we must look first to the language of the statute. When Congress revised § 2254 under AEDPA, it removed language that

had limited the presumption to determinations made "after a hearing on the merits of a factual issue," as well as the statute's list of procedural defects that previously deprived state court factfinding of the presumption. As Professors Fallon, Meltzer, and Shapiro have noted, these changes suggest that "the presumption of correctness now applies across the board." R. Fallon et al. at 1355; see also Valdez, 274 F.3d at 949-51; Mendiola v. Schomig, 224 F.3d 589, 592-93 (7th Cir. 2000); 17B Wright et al. § 4265.2 (noting change of statutory language, raising concerns, and predicting that courts might read some of the procedural requirements back into the statute).

The Third Circuit has taken the position that "the extent to which a state court provides a 'full and fair hearing' is no longer a threshold requirement before deference applies; but it might be a consideration while applying deference under § 2254(d)(2) and § 2254(e)(1)." Blackwell, 387 F.3d at 239. We agree with this approach. While it might seem questionable to presume the correctness of material facts not derived from a full and fair hearing in state court, the veracity of those facts can be tested through an evidentiary hearing before the district court where appropriate. Cf. Valdez, 274 F.3d at 951 n.17, 952 (evidentiary hearing can aid in federal court's assessment of reasonableness under § 2254(d) when state did not hold a full and fair hearing).

Teti does not attempt to argue that he has clear and convincing evidence to overcome the presumption here. Instead he tries to refute the MAC's factual determinations by employing the same documents already considered by the state courts. That approach fails. Describing how different parties stated different versions of events does not constitute the needed showing of clear and convincing evidence; rather, the state trial judge's implicit credibility determinations, adopted by the MAC, are exactly the type of factual determinations to which we defer, at least short of any indication of serious error. Rice, 546 U.S. at 341-42 ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

Teti also argues that the trial judge's conclusion post-trial that there was no relevant conflict of interest contradicts her in-court statements. That argument does not work either. First, the judge's in-court statements were not final determinations and thus not inconsistent with her later ruling. Teti, 801 N.E.2d at 285 n.11 ("That the judge, on first impression, believed there was a conflict did not prevent her from considering the issue further, and then specifically finding, in a reasoned and reflective memorandum . . . , that there was, in fact, no conflict."). Second, such a determination by the state trial judge

-18-

would be a legal -- not factual -- conclusion and thus not relevant to the § 2254(e)(1) inquiry.

Because the presumption of correctness applies to all the state court's factfindings, and because Teti does not point us to any clear and convincing evidence that refutes those factfindings, we turn next to whether he should have been allowed discovery or an evidentiary hearing.

### 2.    Discovery Under Rule 6

Habeas corpus proceedings under § 2254 are civil in nature, but they are governed by a discrete set of procedural rules.  Mayle v. Felix, 545 U.S. 644, 654 & 655 n.4 (2005).  Thus unlike in normal civil cases, there is no entitlement to discovery in habeas proceedings; the availability of discovery is instead circumscribed by Rule 6 of the Rules Governing § 2254 Cases.  Bracy v. Gramley, 520 U.S. 899, 904 (1997); Bader v. Warden, 488 F.3d 483, 488 (1st Cir. 2007).  Under Rule 6, the federal habeas judge has discretion to grant discovery for "good cause."  Rule 6(a).  The party requesting discovery must not only provide reasons for the discovery, but also must specify "any proposed interrogatories and requests for admission" and "any requested documents."  Rule 6(b).  We review the district court's denial of discovery for abuse of discretion.  See Bader, 488 F.3d at 488.

Teti did not comply with the specific requirements of Rule (6)(b); his request for discovery is generalized and does not

-19-

indicate exactly what information he seeks to obtain. A habeas proceeding is not a fishing expedition. E.g., Stanford v. Parker, 266 F.3d 442, 460 (6th Cir. 2001); Rich v. Calderon, 187 F.3d 1064, 1067 (9th Cir. 1999).

In addition, as the district court noted, Teti did not meet the Rule's requirement of "good cause." The Supreme Court has defined "good cause" in this context as specific allegations that give a court "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy, 520 U.S. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)) (internal quotation marks omitted). The district court carefully reviewed the documents submitted to it and concluded they did not suggest that discovery would help establish any claim for relief. The district court did not abuse its discretion in denying discovery.

3. Evidentiary Hearings

We also review the decision whether to grant an evidentiary hearing for abuse of discretion. Pike, 492 F.3d at 70; see also Schriro v. Landrigan, 127 S. Ct. 1933, 1940 (2007).

Before AEDPA, judge-made law governed the decision whether to grant an evidentiary hearing. Under Townsend v. Sain, 372 U.S. 293 (1963), district courts generally had discretion to grant such hearings when they deemed it appropriate. Id. at 318 ("In every case [the district judge] has the power, constrained

-20-

only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim."). In some situations, an evidentiary hearing before the district court was mandatory: "Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in state court, either at the time of the trial or in a collateral proceeding." Id. at 312. Townsend specified six situations which would necessitate a hearing under this standard, including a catch-all category for "any reason" the petitioner might not have received a full and fair hearing on the issue before a state court. Id. at 313.

But Townsend was "significantly qualified by later case law and congressional action[,] leaving the circuit courts in some uncertainty" about when new federal factfinding for state prisoners is appropriate.[4] Bader, 488 F.3d at 487. There is debate post-AEDPA over whether evidentiary hearings are still mandatory in some circumstances, or whether they are simply within the district court judge's discretion when not prohibited. Some courts have concluded that Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992), and AEDPA only modified Townsend's six categories of mandatory hearings, leaving

---

[4] AEDPA did not change the standard for granting evidentiary hearings under § 2255, which applies to federal petitioners. This suggests that Congress intended "to create a discrepancy between the (respectively, somewhat narrower and broader) rights to a hearing in section 2254 and section 2255." 2 Hertz & Liebman § 41.6d. This discrepancy underscores the principles of comity and federalism embodied in § 2254.

the rest of Townsend intact. E.g., Conaway v. Polk, 453 F.3d 567, 582, 590 (4th Cir. 2006); Insyxiengmay v. Morgan, 403 F.3d 657, 670 (9th Cir. 2005); Smith v. Bowersox, 311 F.3d 915, 921 (8th Cir. 2002); Matheney v. Anderson, 253 F.3d 1025, 1039 (7th Cir. 2001); Miller v. Champion, 161 F.3d 1249, 1253 (10th Cir. 1998). And some commentators agree. See 1 Hertz & Liebman § 20.1b ("Even after AEDPA . . . Townsend's mandatory-hearing standards . . . continue[] to govern all situations save those in which the petitioner's procedural default accounts for the state courts' failure to develop the material facts."); W. LaFave et al., Criminal Procedure § 28.7(c) (2d ed. 2004). Indeed, the Advisory Committee Notes for Rule 8 of the Rules Governing § 2254 Cases, regarding evidentiary hearings, suggest that Townsend still applies except to the extent it is specifically superceded by § 2254(e)(2). The Third Circuit, on the other hand, has read AEDPA as rendering all evidentiary hearings purely discretionary. E.g., Campbell v. Vaughn, 209 F.3d 280, 287 (3d Cir. 2000) ("AEDPA, unlike Townsend and Keeney, does not require that such a hearing be held. Instead, federal courts have discretion to grant [an evidentiary] hearing or not.").

At the least, where not explicitly prohibited by § 2254, federal habeas judges retain discretion to grant evidentiary hearings. See Rules Governing § 2254 Cases, Rule 8(a); Schriro, 127 S. Ct. at 1939 (AEDPA did not change the "basic rule" that "the decision to grant an evidentiary hearing [is] generally left to the

-22-

sound discretion of district courts"); <u>Guidry</u> v. <u>Dretke</u>, 397 F.3d 306, 323 (5th Cir. 2005). But that discretion should be exercised in a restrained manner. As the Supreme Court noted in <u>Schriro</u>, Congress through AEDPA meant to curb delays and prevent retrials before habeas courts. 127 S. Ct. at 1940; <u>see</u> <u>also</u> <u>Pike</u>, 492 F.3d at 70. As a result, federal evidentiary hearings seeking to rehear issues addressed by the state courts "ought to be the exception, not the rule." <u>Pike</u>, 492 F.3d at 70.

We need not resolve today the question of whether federal habeas evidentiary hearings are ever mandated. First, AEDPA is clear on one point: an evidentiary hearing is prohibited if "the applicant has failed to develop the factual basis of a claim in State court proceedings" unless certain stringent exceptions apply. 28 U.S.C. § 2254(e)(2). It may seem odd to prohibit an evidentiary hearing where the defendant did not present the facts to a state court but not to prohibit one where he did. But the prohibition is analogous to a procedural default rule, furthering the principles of comity, finality, and federalism by requiring the prisoner to present his claims fully before the state courts. <u>Michael Williams</u> v. <u>Taylor</u>, 529 U.S. 420, 436-37 (2000).

Section 2254(e)(2)'s bar applies where there has been a "lack of diligence" on the part of the petitioner or his counsel before the state courts. <u>Id.</u> at 432. Teti demonstrated such a lack of diligence. "Diligence will require in the usual case that

-23-

the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner proscribed by state law." Id. at 437. Teti's broad claims in his state court motion for a new trial did not raise any specific question sufficient to require the state trial judge to hold an evidentiary hearing. Cf. Bowersox, 311 F.3d at 921-22 (petitioner's request for an evidentiary hearing barred under § 2254(e)(2) where petitioner had submitted only broad allegations to the state court, in conflict with state's requirement of factual allegations sufficient to warrant relief if true). Further, Teti did not develop his argument for an evidentiary hearing in his appeal to the MAC. Teti, 801 N.E.2d at 289. Section 2254(e)(2) does include narrow exceptions that would excuse a petitioner's lack of diligence, but they clearly do not apply to Teti's situation: there is no new rule of constitutional law, nor any new evidence, much less any evidence that "could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A).

Second, even if Teti's request for an evidentiary hearing were not barred by § 2254(e)(2) for lack of diligence, he fails on another threshold matter, just as he did before the state trial court. Akin to Rule 6's "good cause" requirement, a habeas judge, before granting an evidentiary hearing, "must [first] consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the

-24-

applicant to federal habeas relief." Schriro, 127 S. Ct. at 1940; see also Townsend, 372 U.S. at 312.

The requirement is not so stringent that Teti must point to specific facts he will establish that will entitle him to relief, but rather that his allegations would entitle him to relief and the hearing is likely to elicit the factual support for those allegations. See, e.g., Insyxiengmay, 403 F.3d at 670. As the Fourth Circuit noted in the context of a state collateral review petition, "it would create a 'classic catch-22' if [a habeas] defendant were obliged to submit admissible evidence to the [habeas] court in order to be accorded an evidentiary hearing, when the defendant is seeking the hearing because he cannot, without subpoena power or mechanisms of discovery, otherwise secure such evidence." Conaway, 453 F.3d at 584. But see Campbell, 209 F.3d at 290 (petitioner needs clear evidence before a habeas court can justify a new evidentiary hearing, at least where the state court also held an evidentiary hearing and there is a sufficient basis in the record for the state court's conclusions). On the other hand, Teti must allege more than that he received inadequate assistance; he must allege facts sufficient to overcome AEDPA deference to the state court's factfindings and legal conclusion to the contrary. See Schriro, 127 S. Ct. at 1940; Bader, 488 F.3d at 488.

The district court correctly considered this threshold question, concluding that Teti had not given any "indication that

an evidentiary hearing would give rise to 'clear and convincing evidence' that petitioner's trial counsel suffered from a conflict of interest." We turn, however, directly to the question of prejudice. See Strickland, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.").

Teti argues that he suffered prejudice because he was unable to obtain a plea agreement. He does not, however, make the argument that his attorneys failed to obtain a plea agreement because of their conflicted loyalties. Nor would such an argument be plausible, given that Keene ceased representing Lobello shortly after, if not before, he began representing Teti. Teti instead argues that McBride was unable to secure a plea agreement for him because the Commonwealth was worried, once the conflict of interest concern was aired, that such an agreement might be vulnerable on appeal. The argument is hard to credit, as one would think a conviction would have been more vulnerable on appeal. Regardless, it is insufficient.

Teti might be arguing that he was harmed because of procedural irregularities in the hearing before the state trial judge. The relevant harm, however, is the one emanating from Keene's alleged conflict of interest. If a federal evidentiary

hearing could cure any procedural irregularities, Teti still has not explained what harm he would hope to demonstrate beyond the alleged plea agreement harm already discussed.

Teti has not argued sufficient harm to satisfy Mickens, much less the prejudice needed to meet the more stringent standard for establishing ineffective assistance where counsel has a potential, rather than actual, conflict of interest. In short, Teti "continues to assert he needs [an] evidentiary hearing to factually develop his constitutional claims, but he has failed at every level to make a factual showing (as opposed to conclusory statements) as to why those claims merit development through the crucible of an official hearing." Reynolds v. Bagley, 498 F.3d 549, 555 (6th Cir. 2007).

Because Teti provides no clear and convincing evidence that the MAC's factual determinations were erroneous, and because he has not adequately specified what facts he seeks to establish through discovery or an evidentiary hearing, the MAC's factual determinations stand, as does its ultimate conclusion under § 2254(d)(1) that Keene did not provide ineffective assistance of counsel due to any conflict of interest. See Allison, 388 F.3d at 370-71.

C.          Remaining Claims

Teti also claims that McBride shared Keene's conflict of interest and that he received ineffective assistance of counsel for several additional reasons.

The district court reviewed de novo the claim that McBride had a conflict.  It did so on the basis that the MAC did not expressly rule on this issue, although the issue had been presented to it.  See Fortini, 257 F.3d at 47.  We need not address whether this was the correct approach, for whether reviewed de novo or deferentially, Teti's claim fails.  If Keene did not have a conflict, there was no derivative conflict in McBride, and like the state court, we see no possible prejudice to Teti.

We rely on the district court's reasoning on the remaining ineffective assistance claims against McBride.  The district court correctly applied § 2254(d)(1) to these claims, as they were addressed by the state court.  The district court reasoned as follows: Because Teti's main defense was entrapment, McBride's failure to move to sever the two indictments and his allowance of the introduction of evidence on similar but uncharged drug transactions could have been part of a reasonable defense strategy to highlight that the same federal agent initiated all the transactions.  Further, a motion to sever would have failed, as joinder was appropriate under state law.  Finally, the relevant information about Teti's state of mind was provided when Teti

himself testified as to his drug dependency and depression; McBride had promised nothing further in his opening statement. The MAC's conclusion that none of these arguments established ineffective assistance of counsel was therefore not an unreasonable application of federal law under § 2254(d)(1). We agree.

Teti has been well and inventively represented on appeal. The denial of the petition for habeas relief is affirmed.