**Benigno DIAZ–DELEON, Petitioner,**

v.

**Luis SPENCER, Respondent.**

**Civil Action No. 06–11049–NMG.**

United States District Court,
D. Massachusetts.

Dec. 8, 2008.

Benigno Diaz Deleon, Norfolk, MA, pro se.

Scott A. Katz, Office of the Attorney General, Boston, MA, for Respondent.

### ORDER

NATHANIEL M. GORTON, District Judge.

Denying Petition for Habeas Corpus.

### REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254

DEIN, United States Magistrate Judge.

## I. INTRODUCTION

The petitioner, Benigno Diaz–Deleon ("Diaz–Deleon" or the "defendant"), is presently serving a sentence for trafficking in cocaine in an amount of 200 grams or more, trafficking in cocaine in an amount of 14 grams or more, and possession of cocaine with intent to distribute within 1,000 feet of a school zone. He has brought a petition for a writ of habeas corpus under 28 U.S.C. § 2254 claiming that he was denied effective assistance of counsel based on his trial counsel's alleged failure to advise him of a plea offer. This argument was rejected by the trial judge who, after an evidentiary hearing, found that the claim that the defendant had not

been advised of the plea offer was "not borne out" by the credible evidence, and that the decision to go to trial was not unreasonable in light of the evidence. The Massachusetts Appeals Court ("Appeals Court" or "MAC") similarly rejected the defendant's arguments, and affirmed the trial court's decision in an unpublished opinion. *Commonwealth v. Diaz–DeLeon,* 65 Mass.App.Ct. 1115, 841 N.E.2d 287 (table), No. 05–P–857, 2006 WL 223851 (Mass.App.Ct. Jan. 30, 2006).

As detailed more fully herein, the state courts' findings of fact are entitled to deference by this court, and the defendant has not met his burden of proving by clear and convincing evidence that the findings are erroneous or objectively unreasonable. Moreover, the state court decision was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Therefore, this court recommends to the District Judge to whom this case is assigned that the defendant's petition for a writ of habeas corpus be denied.

## II. STATEMENT OF FACTS[1]

### The Underlying Crime

Since the facts of the underlying crime are not relevant to the issues raised by the habeas petition, they will be addressed only briefly. As the trial judge found in connection with her Decision and Order on Defendant's Motion for a New Trial (SA Ex. C), beginning in January 1997, the Massachusetts State Police conducted a year-long investigation into the narcotics activities of Rafael Mejia ("Mejia") in the Natick/Framingham area. During the investigation, the police observed Mejia and

---

1. The respondent has submitted the record below in a Supplemental Answer ("SA") filed    as Docket No. 7.

Andres Tejeda ("Tejeda") engage in a number of drug deals, but never observed the defendant. Mejia and Tejeda were arrested on December 15, 1997 after a sale to an undercover police officer. The police promptly executed a search warrant for the apartment from which they had seen Mejia and Tejeda leave, using a ruse to get into the apartment. The police testified that the defendant was in the apartment, and ran when he saw them at the apartment door. This was the first time the police had seen the defendant, who is Mejia's cousin.

The apartment was a small, two room apartment that was sparsely furnished. The police found 200 grams of cocaine, a digital scale and related items on the kitchen table. They also found a ledger recording sales, written in Spanish, the defendant's passport, two photos of the defendant and other papers with his name on them, and an envelope from the Registry of Motor Vehicles addressed to Benigno Deleon, with a date of birth of April 29, 1927. The police also found hearing aids in the smaller room, along with bags of men's clothing. The police subsequently learned that the defendant is hearing impaired and wears hearing aids.

Prior to the defendant's trial, Mejia and Tejeda entered into plea agreements with the Commonwealth pursuant to which they were to serve only five to six years in prison. They were not sentenced until the conclusion of Diaz–Deleon's trial. On May 19, 1999, Diaz–Deleon was convicted by a Worcester Superior Court jury of trafficking in over 200 grams of cocaine, trafficking in over 14 grams of cocaine, and possession with intent to distribute within 1,000 feet of a school zone.[2] The defendant was sentenced to the mandatory minimum sentence of fifteen years to fifteen years and one day on the first count, to a concurrent sentence of three years to three years and one day on the second count, and to a sentence of two years to two years and one day on the third count, to run from and after the minimum fifteen year sentence. (*See generally* SA Ex. C at 1–3).

### *The Motion for a New Trial*

Diaz–Deleon filed a motion for a new trial on March 16, 2001, claiming that he had been denied effective assistance of counsel because his trial attorney had failed to advise him of a plea agreement offered by the Commonwealth and failed to recommend that he accept the plea. (SA Ex. C at 1; SA Ex. B (transcript of evidentiary hearing)). An evidentiary hearing was held on October 29, 2003 at which the defendant testified. (SA Ex. C at 3; SA Ex. B). As the trial judge summarized the issues presented:

> During the hearing on the instant motion, the defendant claimed that the Commonwealth was prepared to make him the same offer as his codefendants, but that his attorney, Barry Wilson, told the defendant that ... "all the prosecution had was 'mere presence' and that we should, therefore, reject offers to negotiate and proceed to trial." The defendant stated that his counsel told him if the defendant entered into plea negotiations with the Commonwealth he, Wilson, would withdraw his representation. The defendant also claims that but for his attorney's inappropriate advice, he would have taken the plea.

(SA Ex. C at 4).

The trial judge rejected the defendant's contention that he had not been advised of the plea offer by his counsel, finding that "[t]his contention is not borne out by the trial record or the credible evidence ad-

---

2. The defendant was also charged with conspiracy. That charge was not tried to the jury, and was placed on file without a change of plea. (*See* SA Ex. A at 6).

duced at the hearing." (SA Ex. C at 5). Specifically, the trial judge found as follows:

> The trial transcript shows that, at a pre-trial hearing on the defendant's motion for reconsideration of a motion to dismiss, the Commonwealth's attorney said: "I also want to make it very clear the offer was made to all three defendants."[3] This statement was cited by the defendant in his brief to show that he had been offered a deal. Inasmuch as this court has a clear recollection of the incident, the defendant's claim that he was not in the courtroom with his counsel when the statement was made is not credible and the trial record indicates that the defendant was in the courtroom. Moreover, one can infer from this that ... he had been informed of the Commonwealth's offer, and concurred with his counsel's strategy at trial. The defendant was present when counsel for the co-defendant's [sic] continued their cases for disposition. Given the defendant's experience with the criminal justice system, a reasonable inference can be made that the defendant was well aware that the codefendants [sic] cases would be disposed of in a manner favorable to them.

> In fact, during a pre-trial hearing, Wilson constantly emphasized that "this was a serious matter in which my client was looking at a long time with free room and board." During this hearing, Mr. Wilson also stated that if the co-defendants were going to testify against the defendant, "maybe I need to think about making a plea agreement already."

> The record also reflects that during the trial an issue arose concerning alleged communications between the defendant's brother and members of the State Police. At one point during this animated discussion, Wilson, in the defendant's presence, stated "numerous times we thought we had a deal."

> The defendant further relies on pre-trial correspondence between Assistant Attorney General Breen and Wilson to support his contention that Wilson refused to cooperate with the government. The letters do reflect Wilson's apparent unwillingness to have the defendant cooperate with the government. They can also be interpreted as a lawyer steadfastly maintaining that his client has no information to use in order to cooperate. The defendant did not provide this court with an affidavit from Mr. Wilson; nor did he testify at the hearing. The defendant has the burden of establishing trial counsel's ineffectiveness. . . . Given the above cited instances that occurred during this trial, this court finds ample evidence to conclude that the defendant was made aware of the existence of a plea agreement.

(SA Ex. C at 5–7). The trial judge also recognized that she had been informed before trial that the defendant had a hearing impairment and used a hearing aid. The judge made sure that the defendant, who also used a Spanish interpreter, was able to hear the court proceedings. (*See* SA Ex. C at 2 n.1).

In her ruling on the motion for a new trial, the trial court went on to address the defendant's claim "that his counsel's advice not to take a plea offer was manifestly unreasonable because counsel had misunderstood the relevant legal precedent regarding possession and control and therefore wrongly believed the Commonwealth would be unable to meet its burden at trial." (SA Ex. C at 7). The trial court found that mere presence in the area

---

**3.** The defendant dates this hearing as May 5, 1999. (Memorandum in Support of Petitioner's Petition for a Writ of Habeas Corpus ("Def. Mem.") (Docket No. 9) at 8).

where drugs were found would not be sufficient to establish liability, and that the prosecution would have to prove that the defendant had both knowledge of the drugs and the ability and intention to exercise dominion and control over the drugs. (SA Ex. C at 7–8). The trial judge compared the facts of Diaz–Deleon's case favorably with other reported decisions, and noted that "Mr. Wilson spent a considerable amount of time eliciting testimony regarding the fact that the defendant and his father shared the same name and consequently the papers found in the apartment belonged to the defendant's father" and that the police had never seen the defendant at any time before despite the yearlong investigation. (*Id.* at 8–9). The trial judge concluded that "[u]nder these circumstances, defense counsel could reasonably believe that the jury would agree with his stance: that the defendant was merely visiting his cousin and was simply caught in the wrong place at the wrong time." (*Id.* at 9). Thus, the trial judge rejected the defendant's claim that it was ineffective assistance of counsel to proceed to trial.

The defendant appealed the denial of his motion for a new trial to the Massachusetts Appeals Court. In its decision dated January 30, 2006, the MAC found no error in the trial judge's determination that the defense counsel's decision to go to trial was not unreasonable under the circumstances. *Diaz–DeLeon*, 2006 WL 223851, at *1. The Appeals Court also concluded that the defendant's argument that he was never informed of a plea offer was "without support in the record." *Id.* at *2. The order denying the motion for a new trial, therefore, was affirmed. The defendant filed an application for leave to obtain further appellate review with the Massachusetts Supreme Judicial Court, which was

denied on March 28, 2006, 446 Mass. 1105, 844 N.E.2d 1096. (SA Exs. I–J). His habeas petition was then timely filed with this court.

### The Habeas Petition

The defendant contends that the state courts' decisions were based "on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." (Def. Mem. (Docket No. 9) at 6–7 (citing 28 U.S.C. § 2254(d)(1)-(2))). Specifically, the defendant addresses each of the facts relied on by the trial judge, and concludes that they do not establish that he knew about the plea offer. Thus, the defendant admits that the trial judge was correct when she found that, contrary to the defendant's representation, he was at the May 5, 1999 hearing when the prosecutor stated that the offer was extended to all the defendants. However, the defendant argues, the trial judge erred in assuming that the defendant had, in fact, heard the statement when it was made. The defendant contends that there were no arrangements made to accommodate his hearing impairment at the hearing[4] and that he did not hear the statement. (*See* Def. Mem. at 9–10).

The defendant also challenges the court's finding that the defendant should have known that the co-defendants had pleaded guilty when their cases were continued for disposition. The defendant contends that this is mere speculation and does not dispute his testimony at the hearing on the motion for a new trial that he had never been informed of the plea offer. (*See* Def. Mem. at 10–11). Similarly, the defendant argues that the statements of counsel referenced by the trial judge did not refer to a plea offer by the government, but rather related either to a hypo-

---

4. While the defendant did not have his hearing aids at this hearing on May 5, 1999, he did have the services of an interpreter. (*See* SA Ex. E at 27 n.6).

thetical situation or to an agreement with his co-defendants to absolve the defendant of any liability. These statements did not, the defendant contends, advise him of the plea offer. (*See* Def. Mem. at 11–12). The defendant also takes exception to the trial judge's reference to the fact that the correspondence between trial counsel and the prosecution did not establish conclusively that counsel refused to let the defendant cooperate with the prosecution, and to the trial judge's reliance on the lack of information from Attorney Wilson. The defendant argues that these "facts" do not establish that he was aware of the plea offer, and do not refute his uncontradicted testimony that he was not informed of the offer. (*See* Def. Mem. at 12).

These objections to the trial judge's decision were presented to the MAC in connection with the defendant's appeal of the denial of his motion for a new trial. (*See* SA Ex. E at 27–36). The MAC affirmed the trial judge's conclusion that the defendant's claim of ignorance was not borne out by the record. As the Court held:

> [T]he trial transcript references a statement by one of the Commonwealth's attorneys that "I also want to make it very clear that the offer [discussed above] was made to all three defendants." The motion judge also found that the defendant was present in the courtroom when the statement was made, and that the court was attentive

to the defendant's hearing and language barriers. Finally, as stated *supra*, there was no affidavit from trial counsel. As the defendant's argument is without support in the record, we reject it.

*Diaz–DeLeon*, 2006 WL 223851 at *2.

Additional facts will be provided below where appropriate.

## III. DISCUSSION

### A. Standard of Review

The standard of review to be applied to Diaz–Deleon's habeas corpus petition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under this standard, a federal habeas court may not grant a writ of habeas corpus unless the underlying state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

■ Diaz–Deleon is challenging the factual determination of the state courts that he was informed of the plea offer. The state trial and appellate courts' findings of facts are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).[5]

---

5. Under 28 U.S.C. § 2254(d)(2), the federal habeas courts must defer to the state court determination unless it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct" and the presumption can be overcome only by clear and convincing evidence. The relationship between the two standards "remains unclear" and has not been decided by the First Circuit. *See Teti v. Bender*, 507 F.3d 50, 57–58 (1st

Cir.2007), and cases cited. Since Diaz–Deleon is challenging the express factual finding that he had been advised of the plea offer, this court will address his claim under § 2254(e), as recommended by the First Circuit in *Teti*, 507 F.3d at 58 (28 U.S.C. § 2254(e)(1) applied to individual factfindings). Like the court in *Teti*, however, this court concludes that the decision to apply § 2254(e) "is not determinative" because "not only do both provisions express the same fundamental principle of deference to state court findings," but also if this court were to apply § 2254(d)(2), it would also find that the state

*See Norton v. Spencer,* 351 F.3d 1, 6 (1st Cir.2003) (quoting *Sumner v. Mata,* 455 U.S. 591, 592–593, 102 S.Ct. 1303, 1304, 71 L.Ed.2d 480 (1982)); *Rashad v. Walsh,* 300 F.3d 27, 35 (1st Cir.2002). The defendant has the burden of overcoming the presumption by "clear and convincing evidence." *Teti v. Bender,* 507 F.3d 50, 57 (1st Cir.2007) (quoting 28 U.S.C. § 2254(e)(1)). As detailed below, the defendant has not satisfied this burden.

■ Diaz–Deleon also seems to be challenging the State courts' conclusion that it was not ineffective assistance of counsel for Mr. Wilson to recommend that the defendant proceed to trial. Since it is undisputed that the state courts applied the appropriate standard for assessing an ineffective assistance of counsel claim, the issue is whether the decision was an unreasonable application of clearly established Federal law.[6] The habeas court "may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). As detailed below, applying these principles to the defendant's claims mandates that the habeas petition be denied.

### B. *The Factual Findings*

■ In the instant case, after observing his testimony at an evidentiary hearing and reviewing the record, the trial judge rejected the defendant's testimony that he did not know about the plea offer. The

defendant has not offered any substantive evidence to refute the trial judge's finding, and merely contends that she was wrong. He has not put forth any evidence, much less clear and convincing evidence, to overcome the presumption that the factual finding was correct. "[T]he state trial judge's implicit credibility determinations, adopted by the MAC, are exactly the type of factual determinations to which we defer, at least short of any indication of serious error." *Teti,* 507 F.3d at 59.

> "Credibility is quintessentially a matter of fact, reserved in almost every circumstance for the trier. In this instance, the state trial court spoke clearly, and the [MAC] resoundingly endorsed its credibility assessment. Under these circumstances, it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review."

*Sanna v. Dipaolo,* 265 F.3d 1, 10 (1st Cir.2001) (internal citations omitted).

Furthermore, other relevant information existed, but the defendant elected not to present it to the court. As the defendant's counsel informed the trial judge at the hearing on the motion for a new trial, he had spoken with Attorney Wilson, but "made a strategic decision not to call him" since Attorney Wilson was apparently hostile, and Diaz–Deleon's counsel could not be sure how Attorney Wilson would testify. (SA Ex. E at 30 n.9; Ex. B at 36–38). However, there is nothing in the record to indicate that Attorney Wilson would not testify truthfully if subpoenaed to do so.

---

courts' factual conclusions were not unreasonable in light of the record before the state courts. *See Teti,* 507 F.3d at 58 (internal quotation and citation omitted).

**6.** Diaz–Deleon does not contend that the state court decision was contrary to clearly established federal law. (*See* Def. Mem. at 6–7). Therefore, this alternative basis for habeas

relief under 28 U.S.C. § 2254(d)(1) will not be discussed. *See McCambridge v. Hall,* 303 F.3d 24, 36 (1st Cir.2002) (where court applied the appropriate standard and there is no Supreme Court case with materially indistinguishable facts, "the debate centers on whether the state appeals court determination was an 'unreasonable application'" of federal law).

Since the defendant has the burden of proving that the presumption of correctness should not apply, Attorney Wilson's absence at the evidentiary hearing was glaring and properly considered by the trial judge.

This court also finds, to the extent that is relevant (see note 5, *supra* ), that the trial court's decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The defendant denied being at the hearing where the prosecutor stated that all of the defendants had been offered the same deal. (*See* Ex. C at 5–6; Def. Mem. at 9). This was proven to be false by clear and convincing evidence. Then the defendant claimed that he did not hear the statement. In light of his prior false statement, it would not be unreasonable for the court to refuse to credit this denial. In addition, the record establishes that there was an interpreter at the hearing on May 5, 1999, and that the court was aware of the defendant's hearing impairment at the time. (*See* SA Ex. E at 27 n.6). Attorney Wilson apparently stated at the onset of the hearing, "My client is hard of hearing, so the interpreter is going to have to yell at some point." (*Id.*). Under such circumstances, it is not unreasonable for the trial judge to have rejected the defendant's contention that he did not hear what was going on at the hearing.

At the evidentiary hearing, the defendant (who proceeded in English and did not use the interpreter who was available) denied hearing virtually anything during the trial. (*See* Ex. B at 27 (witness elects to answer the questions in English); 57–58 ("But at my trial, I didn't hear anything that transpired or took place at my trial. Most of the time I could not hear nothing.")). However, the testimony was inconsistent with the facts as known by the trial judge. As she summarized the situation:

> It should be noted that prior to trial, this court was informed that the defendant is hearing impaired. The defendant was given a court supplied hearing aid. This court repeatedly inquired of the defendant, thru his interpreter, whether he was able to hear the proceedings. At one point it was determined that the hearing aid was not working and the proceedings were suspended. At that time, this court then noted its observations that the defendant had via body language been reacting to the trial testimony. Thereafter this court inquired whether the defendant was able to hear and was assured that he could. In fact, the defendant made comments during the trial that indicated he was able to hear.

(SA Ex. C at 2–3 n.1). The defendant has not challenged these statements by the trial judge, and does not claim that her assertions are not supported by the trial transcript. Since the trial judge had a sound basis for rejecting the defendant's assertion at the evidentiary hearing that he had heard virtually nothing of the trial, it was not unreasonable for her to reject his claim that he did not hear the statement made at the pretrial hearing that all the defendants had been offered the same deal. In sum, given the fact that it is undisputed that the prosecutor did state in open court, and in the defendant's presence, that all the defendants were given the same plea offer, and the trial judge had a reasonable basis for rejecting the defendant's claim that he did not hear the statement, this court cannot find that the state courts' decisions were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.[7]

7. In light of this conclusion, this court will not address the other facts relied on by the

trial judge to establish that the defendant

### C. *The Ineffective Assistance of Counsel Claim*

 The trial judge found that the Attorney Wilson's decision to proceed with the trial did not "fall below the range of competence demanded of attorneys in criminal cases." (SA Ex. C at 5 (citations and internal punctuation omitted)). This is consistent with the federal standard set forth in *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires proof (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mello v. DiPaulo*, 295 F.3d 137, 144 (1st Cir.2002). After analyzing the controlling case law and the facts of Diaz–Deleon's case, the trial judge concluded that the "defense counsel could reasonably believe that the jury would agree with his stance: that the defendant was merely visiting his cousin and was simply caught in the wrong place at the wrong time." (SA Ex. C at 9). The Appeals Court agreed, finding it particularly worthy of note that there was no evidence that the defendant rented the apartment, and that, "despite a year-long investigation, the defendant had not been seen at or near the apartment or anywhere else in the course of the investigation prior to the day of his arrest." *Diaz–DeLeon*, 2006 WL 223851, at *1. The state courts' conclusion that "under the circumstances, defense counsel's belief that he would be able to create reasonable doubt regarding the prosecution's case was not unreasonable" is not an unreasonable application of federal law. *See id.*

knew about the plea agreement. Suffice it to say that the defendant has not offered any clear and convincing evidence that the trial judge's reliance on these other facts was un-

### IV. CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that petitioner's Petition for a Writ of Habeas Corpus be DENIED.

October 24, 2008.

reasonable, and he has merely argued that the judge erred in her interpretation of the facts. This is not enough to meet the defendant's burden.