*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

_____

## UNITED STATES
Appellee

**v.**

## Eliud I. LOPEZ, Machinery Technician Third Class
United States Coast Guard, Appellant

**No. 24-0226**
Crim. App. No. 1487

Argued April 29, 2025—Decided September 2, 2025

Military Judge: Bryan D. Tiley

For Appellant: *Lieutenant Commander Thadeus J. Pope* (argued); *Lieutenant Schuyler B. Millham* (on brief).

For Appellee: *Lieutenant Christopher J. Hamersky* (argued); *Lieutenant Elizabeth Ulan.*

Judge SPARKS delivered the opinion of the Court, in which Chief Judge OHLSON and Judge HARDY joined. Judge MAGGS filed a separate dissenting opinion. Judge JOHNSON filed a separate opinion dissenting in part and in the judgment.

_____

Judge SPARKS delivered the opinion of the Court.

This case arises out of the conviction of Machinery Technician Third Class (E-4) Eliud I. Lopez (Appellant), in accordance with his pleas, of two specifications of indecent recording in violation of Article 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920c (2018). The charges stemmed from Appellant using his cell phone to film a shipmate getting into and out of the shower and to record his roommate changing clothes. Appellant was sentenced to a bad-conduct discharge, three months of confinement, and reduction to grade E-1. The convening authority reduced the sentence to two months of confinement, and the military judge entered the altered sentence into judgment. Due to trial counsel's failure to inform the brig of the reduced sentence, Appellant served twenty-six additional days in confinement before he was released. The United States Coast Guard Court of Criminal Appeals (CCA) affirmed the findings and only so much of the sentence as provided for two months of confinement and a bad-conduct discharge. *United States v. Lopez,* No. 1487, 2024 CCA LEXIS 278, at *19, 2024 WL 3369740, at *7 (C.G. Ct. Crim. App. July 11, 2024) (unpublished). As a remedy for his illegal post-trial confinement, the CCA ordered that Appellant should be paid twenty-six days of pay and allowances at the E-4 rate. *Id.,* 2024 WL 3369740, at *7.

Appellant asks this Court to consider two questions: (1) Did the lower court err when it denied most of Appellant's motion for appellate discovery related to his illegal post-trial confinement?; and (2) Did the lower court err when it ordered backpay as a remedy for Appellant's illegal post-trial confinement? In addition, this Court specified an issue asking what the proper standard of review is when evaluating a Court of Criminal Appeals decision on a request for appellate discovery.[1]

---

[1] The granted issues were:

    I.   What is the standard of review when the Court of Appeals for the Armed Forces evaluates a

For the reasons outlined below, we review the lower court's decision on appellate discovery for an abuse of discretion. Employing that standard, we hold that the lower court did not abuse its discretion in its response to Appellant's appellate discovery motion because Appellant failed to provide a threshold level of information as to why the requested materials would demonstrate bad faith or malfeasance on the part of the Government. In addition, we conclude that the lower court erred in granting Appellant twenty-six days of pay and allowances as a remedy for his illegal post-trial confinement. The case is therefore remanded to the CCA to review for an appropriate remedy for Appellant's illegal post-trial confinement in keeping with this Court's decision.

## I. Background

Following the convening authority's decision to reduce Appellant's sentence by one month, the district staff judge advocate (SJA) emailed information about the convening authority's action to the trial counsel and his supervisor, pointing out that the convening authority had reduced the confinement by one month and expressing his understanding that the trial counsel "will forward this to the military judge for final entry and get copies to [defense counsel], [special victims counsel], etc." Trial counsel forwarded the convening authority's action to a group of people including

---

decision of a Court of Criminal Appeals on a request for appellate discovery?

II. Did the lower court err when it mostly denied Appellant's motions for appellate discovery regarding his illegal post-trial confinement, after which it found "simply no evidence of anything other than negligence" regarding its cause?

III. Whether the lower court erred in ordering backpay for Appellant's illegal post-trial confinement.

*United States v. Lopez*, 85 M.J. 269 (C.A.A.F. 2024) (order granting review).

the military judge, defense counsel, special victims counsel, support staff, and the court reporter. The military judge completed the entry of judgment with the approved sentence of two months of confinement. Trial counsel then forwarded the entry of judgment to multiple people, including defense counsel. According to Coast Guard regulations, the trial counsel was also responsible for notifying the place of confinement about Appellant's reduced period of confinement. *See* Dep't of Homeland Security, COMDTINST M5810.1H, U.S. Coast Guard Military Justice Manual para. 21.D.3 (July 2021) [hereinafter U.S. Coast Guard Military Justice Manual]. However, trial counsel failed to do so. As a result, Appellant was released from confinement on January 16, 2023, rather than on December 22, 2022, as he should have been. He served a total of twenty-six days of excess confinement. At the time of his confinement, Appellant was beyond his end of active service date.

After the deputy SJA learned and informed others about the error, someone filed an anonymous complaint with the Office of the Inspector General (OIG) at the Department of Homeland Security (DHS). DHS referred the complaint to the Coast Guard Investigative Service (CGIS). Because it appeared to be noncriminal, CGIS Special Agent JK referred the complaint to the Deputy Judge Advocate General (DJAG) via email as the appropriate authority to handle the issue.

The following day, the DJAG replied. He summarized the error as follows: "Due to a misunderstanding of responsibilities, Trial Counsel failed to notify the confinement facility that the convening authority had granted clemency. This error was not realized until after [Appellant] was released from confinement." He discussed what had occurred and what steps the Legal Service Command had taken to ensure the error would not be repeated. He then concluded with, "Recommend that CGIS close this complaint."

*CCA opinion*

At the CCA, Appellant raised assignments of error asserting that trial counsel had committed prosecutorial misconduct and the DJAG's actions comprised unlawful command influence (UCI). *Lopez*, 2024 CCA LEXIS 278, at *1, 2024 WL 3369740, at *1-2. Appellant filed a motion requesting that the CCA compel discovery of numerous items that would provide "all relevant statements, investigations, electronic communications, and records of telephonic and in-person communications regarding [Appellant's] unlawful confinement." The Government opposed. The lower court partially granted the motion and ordered production of statements or evidence submitted by Coast Guard or Navy Department personnel in response to the OIG complaint. In response, the Government produced the email from the DJAG reviewing the complaint and recommending that it be closed and a CGIS case status spreadsheet pertaining to the complaint. Appellant filed a second motion to compel discovery, this time requesting a narrower range of materials, which was denied by the lower court.

In a unanimous decision, the CCA found that Appellant failed to meet the threshold burden of demonstrating that appellate inquiry was required and denied his request for further factfinding. *Id.* at *15-16, 2024 WL 3369740, at *6. It found "no evidence that by taking action requested of him in an administrative inquiry, the DJAG was attempting to influence the participants of this court-martial or that DJAG was deliberately trying to deprive this Court of information that might be relevant to the adjudication of this case." *Id.* at *9-10, 2024 WL 3369740, at *4. It acknowledged the Government's error and its prejudice to Appellant but determined that there was "not a scintilla of evidence of anything beyond negligence in failing to notify the brig." *Id.* at *15, 2024 WL 3369740, at *6. Therefore, it found that Appellant had not raised "a reasonable probability that the result of this proceeding would be different if the putative information was disclosed." *Id.* at *16, 2024 WL 3369740, at *6. It further stated that Appellant's illegal confinement was "a result of negligent failure to

recognize the effect of clemency on appellant's release date. The harm did not result from any bad faith or intentional desire to punish the appellant." *Id.* at \*17-18, 2024 WL 3369740, at \*7 (internal quotation marks omitted) (quoting *United States v. Collins*, 44 M.J. 830, 833 (A. Ct. Crim. App. 1996)).

The lower court also declined Appellant's request to set aside his bad-conduct discharge as a remedy. Instead, drawing on precedent from its own and other service courts, it ordered that Appellant receive twenty-six days of pay and allowances at the E-4 rate. *Id.* at \*19, 2024 WL 3369740, at \*7.

## II. Analysis

### A. Standard of Review

This Court has yet to identify a standard of review for appellate discovery issues.

Though our opinion in *United States v. Campbell*, 57 M.J. 134 (C.A.A.F 2002), did not articulate a standard of review, Appellant argues that whether the CCA properly applied the *Campbell* factors to a post-trial discovery dispute is a question of law and therefore the correct standard of review is de novo. He references *United States v. Fagan*, in which this Court reviewed de novo issues related to the proper application of the *Ginn*[2] factors in determining whether a *DuBay*[3] hearing was required to resolve a post-trial claim of cruel and unusual punishment. 59 M.J. 238, 241 (C.A.A.F. 2004) (citing *United States v. Sales*, 56 M.J. 255, 258 (C.A.A.F. 2002)).

The Government counters that the proper standard of review for appellate discovery issues is abuse of discretion. They trace this Court's trajectory in addressing matters of appellate discovery and note an increasing tendency to rely upon the discretion of the lower courts to decide whether

---

[2] *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997).

[3] *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

additional discovery is necessary and what form it should take, moving from *DuBay* to *Ginn* to *Campbell*. The Government also notes that discovery rulings at the trial level are reviewed for an abuse of discretion. *See United States v. Stellato,* 74 M.J. 473, 480 (C.A.A.F. 2015).

We believe that abuse of discretion is the proper standard of review under the circumstances. The *Campbell* test establishes that a determination of whether appellate discovery is warranted is a discretionary decision by the CCAs. *See Campbell*, 57 M.J. at 138 (noting a CCA must first determine whether the appellant demonstrated "some measure of appellate inquiry is warranted"); *id.* (providing a nonexhaustive list of factors to be considered); *id.* (establishing that if a CCA decides appellate inquiry is warranted, it is within its discretion to determine what "method of review should be used" and observing that "[s]uch determinations are necessarily contextual and not generally conducive to a single solution"). This Court must in turn give deference to this discretionary determination, which is incompatible with the de novo standard of review. In addition, we take into consideration that the federal circuit courts of appeals apply the abuse of discretion standard in similar circumstances. While not directly analogous, in habeas corpus cases district courts have the discretion to permit discovery upon showing of "good cause" by petitioners. *Bracy v. Gramley*, 520 U.S. 899, 904-09 (1997). The circuit courts review these decisions for an abuse of discretion.[4] Similarly, in habeas cases the federal circuit courts

---

[4] *See Ochoa v. United States*, 45 F.4th 1293, 1298 (11th Cir. 2022); *Simpson v. Carpenter*, 912 F.3d 542, 575 (10th Cir. 2018); *Sparks v. Davis*, 756 F. App'x 397, 400 (5th Cir. 2018); *Tabb v. Christianson*, 855 F.3d 757, 763 (7th Cir. 2017); *Donald v. Spencer*, 656 F.3d 14, 16 (1st Cir. 2011); *Williams v. Beard*, 637 F.3d 195, 209 (3d Cir. 2011); *Cornwell v. Bradshaw*, 559 F.3d 398, 410 (6th Cir. 2009); *Teti v. Bender*, 507 F.3d 50, 60 (1st Cir. 2007); *Dung The Pham v. Terhune*, 400 F.3d 740, 741 (9th Cir. 2005); *Newton v. Kemna*, 354 F.3d 776, 783 (8th Cir. 2004); *United States v. Roane*, 378 F.3d 382, 403 (4th Cir. 2004); *United States v. Gale*, 314 F.3d 1, 6 (D.C. Cir. 2003); *Beatty v. Greiner*, 50 F. App'x 494, 497 (2d Cir. 2002)

of appeals review a district court's decision whether to hold an evidentiary hearing for an abuse of discretion.[5]

"Military judges abuse their discretion (1) if the findings of fact upon which they predicate their ruling are not supported by the evidence of record; (2) if they use incorrect legal principles; or (3) if their application of the correct legal principles to the facts is clearly unreasonable." *United States v. Wilson*, 84 M.J. 383, 390 (C.A.A.F. 2024) (citing *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010)). Evaluation of appellate discovery issues involves mixed questions of law and fact. The *Campbell* factors provide a legal standard, but application of those factors requires an assessment of relevant facts. In the abuse of discretion context, "[w]hen an appeal presents a mixed question of law and fact . . . this Court will find that a military judge abused her discretion if her findings of fact are clearly erroneous or [her] conclusions of law are incorrect." *United States v. Buford*, 74 M.J. 98, 100 (C.A.A.F. 2015) (second alteration in original) (internal quotation marks omitted) (quoting *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995)). We see no reason to disturb any of the lower court's factual findings. Therefore, we focus our review of the appellate discovery question on whether the lower court erred in its conclusions of law.

---

[5] *See Ochoa*, 45 F.4th at 1298; *Shannon v. United States*, 39 F.4th 868, 876-77 (7th Cir. 2022); *United States v. Gaskins*, 6 F.4th 1350, 1362 (D.C. Cir. 2021); *Batista v. United States*, 792 F. App'x 134, 136 (2d Cir. 2020); *United States v. Edwards*, 768 F. App'x 702, 703 (9th Cir. 2019); *Simpson*, 912 F.3d at 575; *Sparks*, 756 F. App'x at 400; *Juniper v. Zook*, 876 F.3d 551, 563 (4th Cir. 2017); *Cornwell*, 559 F.3d at 410; *Teti*, 507 F.3d at 60; *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); *Newton*, 354 F.3d at 785.

## B. Appellate Discovery

*Applicable Law*

In *Campbell*, this Court addressed how the lower court should approach a post-trial dispute over discovery relevant to an appeal. 57 M.J. at 138. We determined that first, an appellant must meet the threshold burden of "demonstrating that some measure of appellate inquiry is warranted." *Id.* Factors to consider include, among other things:

> (1) [W]hether the defense has made a colorable showing that the evidence or information exists;
>
> (2) [W]hether or not the evidence or information sought was previously discoverable with due diligence;
>
> (3) [W]hether the putative information is relevant to the appellant's asserted claim or defense; and
>
> (4) [W]hether there is a reasonable probability that the result of the proceeding would have been different if the putative information had been disclosed.

*Id.* If an appellant reaches this threshold burden, an appellate court then has discretion to determine the best method for obtaining additional evidence. *Id.* (citing *United States v. Lewis*, 42 M.J. 1, 6 (C.A.A.F. 1995)).

When a post-trial claim is inadequate on its face or conclusively refuted by the record, further factfinding is unnecessary. *United States v. Bess*, 80 M.J. 1, 13 (C.A.A.F. 2020) (citing *Campbell*, 57 M.J. at 138). "[T]he threshold triggering further inquiry should be low, but it must be more than a bare allegation or mere speculation." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *United States v. Johnston*, 39 M.J. 242, 244 (C.M.A. 1994)). In *Bess*, because the appellant showed "not a scintilla of evidence" of UCI, this Court determined that a *DuBay* hearing was not required. *Id.* (internal quotation marks omitted).

*Discussion*

The CCA agreed that it was trial counsel's responsibility to notify the brig of the convening authority's sentence modification. *Lopez*, 2024 CCA LEXIS 278, at *3, 2024 WL 3369740, at *1. Neither party disputes this finding. The lower court also recognized that neither party disputed that the Government's failure to inform the brig resulted in Appellant's illegal post-trial confinement. *Id.* at *4, 2024 WL 3369740, at *2. "Whatever the reasons for this failure, it deprived Appellant of his liberty without due process of law in violation of the Fifth Amendment [and] is entirely inexcusable." *Id.*, 2024 WL 3369740, at *2 (footnote omitted).

Appellant believes that trial counsel committed prosecutorial misconduct by failing to forward the convening authority's sentence modification to the brig, and that the DJAG committed UCI when he recommended that the OIG inquiry into the complaint about Appellant's extended confinement be closed. He argues that the lower court erred when it denied his motion to compel post-trial discovery relevant to his claims because, given the circumstances, more appellate factfinding was necessary through either additional discovery, affidavits, and/or a *DuBay* hearing to establish whether the Government conduct amounted to prosecutorial misconduct.

The *Campbell* factors were developed to assist an appellate court in determining whether "some measure of appellate inquiry is warranted." 57 M.J. at 138. The absence of any one of the four listed factors will raise questions as to whether an appellant has met his threshold burden. The CCA did not analyze the first three factors and instead based its decision largely on Appellant's failure to convince under the fourth *Campbell* factor, finding that:

> There is not a scintilla of evidence of anything beyond negligence in failing to notify the brig. It is beyond speculative that a relatively junior officer wantonly or deliberately ignored a Flag Officer's action reducing the sentence. Had the trial counsel been acting in bad faith, it is unlikely he would

> have, on more than one occasion, informed trial defense counsel of the reduction in confinement.
>
> Accordingly, Appellant fails to show a reasonable probability that the result of this proceeding would be different if the putative information was disclosed.

*Lopez*, 2024 CCA LEXIS 278, at *15-16, 2024 WL 3369740, at *6.

We focus our analysis on the third and fourth *Campbell* factors, which examine whether the information desired is relevant to Appellant's asserted claim or defense and whether there is a reasonable probability that the result of the proceeding would have been different if the putative information had been disclosed. It is impossible to answer either of these questions in the affirmative because Appellant did not provide the lower court with any concrete evidence to support his claims. Both defense motions to compel appellate discovery were bare-bones filings. They lacked any information substantial enough to cross the required threshold signaling further inquiry was necessary into potential bad faith or malfeasance on the part of the Government.

Given the range and nature of the factors to be considered, *Campbell* is a totality of the circumstances test. The circumstances here do not warrant further appellate investigation. Appellant proposes that the mere fact of the OIG investigation and the DJAG's recommendation to close the complaint provide enough evidence to merit granting the discovery he requested. He references details that suggest the Coast Guard took the illegal post-trial confinement seriously, but nothing that indicates there was bad faith or intentionality on the part of the trial counsel, who twice notified defense counsel about the reduced sentence even though he failed to notify the brig. Appellant references emails suggesting officials discussed opening a Coast Guard Rules of Professional Responsibility investigation, and a declaration detailing the SJA's involvement in conversations surrounding the illegal confinement. Appellant focuses on a statement by the SJA that she and the Legal

11

Service Command's Military Justice Division Officer discussed Appellant's untimely release and agreed "not to gather or hand over any files pertaining to this issue to the defense but would cooperate if asked for information about it in the future." However, the same document contains a detailed description of the SJA's efforts to call attention to the error and impress upon others the severity of what occurred, as well as her awareness of the DHS OIG complaint. As part of the appellate record, the Government attached a declaration from CGIS Special Agent JK stating that the complaint had been adequately addressed and there was no suspicion of criminal conduct involved. There is no indication of anyone trying to sweep the situation under the rug. We see nothing in these materials that suggests bad faith.

In *Campbell*, this Court reviewed the factors and sent the case back to the lower court to conduct further appellate discovery. 57 M.J. at 139. However, we disagree with Appellant that the facts in *Campbell* present circumstances similar to his own. In *Campbell*, defense counsel requested a copy of an ethics investigation or statements made by witnesses and subjects of a prosecutorial misconduct inquiry. *Id.* at 135-36. Their request was based upon the fact that three potential witnesses presented signed but unsworn letters stating that the prosecution had pressured them into testifying a certain way. *Id.* at 135. This is far more damning evidence of Government bad faith than the mere existence of an OIG complaint that was acknowledged and addressed by the DJAG. In addition, defense counsel in *Campbell* sought a specific report and statements pertaining to the alleged wrongdoing, a far narrower and more targeted request than that made by Appellant.

Appellant also claims that the lower court erred in denying most of the requested discovery because there was no evidence of Government bad faith when Appellant would have needed the requested discovery to prove any bad faith. This argument has merit only if Appellant started with some indication of bad faith that further evidence might build upon. When there is "not a scintilla" of

such evidence, as concluded by the lower court in line with *Bess*, then requesting discovery to prove bad faith becomes a fishing expedition. There must be something to start with.

In addition, Appellant highlights a single sentence in this Court's predecessor's decision in *United States v. Suzuki*, in which it upheld the military judge's decision granting the appellant additional days of administrative credit due to illegal pretrial confinement. 14 M.J. 491, 493 (C.M.A. 1983). The brief opinion stated that "in light of the egregious facts of the instant case, we conclude that appellant merits meaningful relief with respect to the remainder of his sentence." *Id.* Appellant claims that here the lower court did not appropriately weigh the "egregious facts" of his situation as required by *Suzuki*.

This Court will not disturb the lower court's assessment of the facts, nor do we consider them egregious. There is no indication of anything nefarious in trial counsel's failure to inform the brig or the Coast Guard's handling of the error once it was discovered. The CCA did not abuse its discretion in denying Appellant's request for further appellate discovery. Appellant presented "not a scintilla" of evidence that the error made by the Government was anything beyond negligence.

### C. Backpay Remedy

This Court "review[s] de novo whether a CCA acted outside the scope of its Article 66 authority." *United States v. Williams*, 85 M.J. 121, 124 (C.A.A.F. 2024) (citing *United States v. Nerad*, 69 M.J. 138, 141-42 (C.A.A.F. 2010)).[6]

---

[6] Under Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2018), a finding or sentence may not be held incorrect as an error of law "unless the error materially prejudices the substantial rights of the accused." As Appellant's counsel explained during oral argument, Appellant challenged the lower court's chosen remedy in hopes of having his bad-conduct discharge set aside, which could be a more advantageous outcome for Appellant than receiving less than a month of backpay. We do not consider a CCA decision on remand along these lines to be outside the realm of

Appellant argues that it was outside the scope of the CCA's authority to grant him pay and allowances to compensate for his illegal post-trial confinement. According to Coast Guard pay regulations, Appellant's entitlement to pay and allowances ended upon the announcement of his sentence. Dep't of Homeland Security, COMDTINST M7220.29D, U.S. Coast Guard Pay Manual para. 2.J.4.c. (Nov. 2019) ("Pay and allowances end on date the enlistment expires. They will not accrue again until the date member is restored to a full duty status unless the sentence is completely overturned or set aside"); *see also* U.S. Coast Guard Military Justice Manual para. 20.E.7. Appellant claims that, as a result, he was owed no pay during his confinement that the CCA could restore. He argues that the CCA's remedy runs counter to Article 58b(c), which states that, if a sentence involving forfeiture of pay and allowances is set aside or disproved, the servicemember "shall be paid the pay and allowances which the member would have been paid." Article 58b(c), UCMJ, 10 U.S.C § 858b(c) (2018). Because Appellant was no longer on paid status, he

---

possibility. The lower court opinion included a detailed explanation about why it considered setting aside the bad-conduct discharge an inappropriate remedy. *Lopez*, 2024 CCA LEXIS 278, at *17-18, 2024 WL 3369740, at *6-7. However, it also included strong language disapproving of the due process violation. "Whatever the reasons for this failure, it deprived Appellant of his liberty without due process of law in violation of the Fifth Amendment, is entirely inexcusable, and warrant[s] our sharpest criticism." *Id.* at *4, 2024 WL 3369740, at *2 (alteration in original) (footnote omitted) (internal quotation marks omitted) (quoting *United States v. Hilt*, 18 M.J. 604, 604 (A.F.C.M.R. 1984)). Morever, Appellant specifically requested this Court "reverse and remand to the lower court to determine what other appropriate relief Appellant should receive" consistent with the law. Although a remand to the CCA may not ultimately achieve Appellant's desired outcome with respect to his bad-conduct discharge, that is the remedy he requested. Having prevailed on the law, Appellant deserves the opportunity to present his argument for a different relief remedy to the CCA. We therefore conclude that Appellant was possibly prejudiced by the CCA decision, giving this Court authority to review this question.

14

would have been paid nothing. The Government counters that the lower court granted appropriate relief based on case law and its authority under Article 66(d)(2), UCMJ, 10 U.S.C § 866(d)(2) (2018).

The CCA referenced three sources in deciding it had authority to grant Appellant relief in the form of pay and allowances: (1) Article 66, UCMJ; (2) Article 75, UCMJ, 10 U.S.C. § 875 (2018); and (3) precedent from Coast Guard and other Courts of Criminal Appeals. *Lopez*, 2024 CCA LEXIS 278, at \*19, 2024 WL 3369740, at \*7. It cited the provision in Article 66(d)(2), UCMJ, granting the lower courts authority to "provide appropriate relief if the accused demonstrates error or excessive delay in the processing of the court-martial after the judgment was entered into the record." *Id.,* 2024 WL 3369740, at \*7. It also relied in part upon Article 75(a), UCMJ, which states that "all rights, privileges, and property effected by an executed part of a court-martial sentence which has been set aside or disapproved . . . shall be restored." However, Appellant points out that he was no longer on paid status during his confinement. He was not supposed to be paid at all. Therefore, there was no property (pay or allowances) to restore.

The lower court cited three service court decisions to support its own decision: *United States v. Yanger*, 68 M.J. 540, 542-43 (C.G. Ct. Crim. App. 2009) (granting the appellant six days of pay and allowances to compensate for the six days he spent in civilian confinement between the charged offense and his trial); *United States v. Hammond*, 61 M.J. 676, 680 (A. Ct. Crim. App. 2005) (ordering that appellant "receive thirty days of pay and allowances at the grade of E4 to compensate appellant for thirty days of illegal post-trial confinement"); and *United States v. Sherman*, 56 M.J. 900, 902-03 (A.F. Ct. Crim. App. 2002) (awarding the appellant five days of pay to compensate for five days he spent in civilian pretrial confinement). Of these, only *Hammond* addresses a similar situation where the appellant received pay and allowances as a remedy for illegal post-trial confinement, despite his Expiration Term of Services (ETS) date having passed while he was in pretrial

confinement. 61 M.J. at 678.[7] In *Hammond*, the Army CCA looked to Rule for Courts-Martial (R.C.M.) 305(k), which governs pretrial confinement. The court adopted the rule's standard of punishment equivalency, providing in part that one day of confinement credit is equal to "[one] day of total forfeiture or a like amount of fine," as the best mechanism for granting appropriate post-trial confinement relief. 61 M.J. at 679-80.

We agree with Appellant that the CCA's decision to grant him pay that he was never entitled to falls outside the scope of its Article 66, UCMJ, authority to grant appropriate relief if the accused demonstrates an error in post-trial processing. R.C.M. 305(k) relief is not applicable here because, unlike in pretrial confinement situations, Appellant was no longer entitled to pay and allowances. The authority granted under Article 66(d)(2), UCMJ, does not turn the lower courts into courts of equity that can award financial damages to right any wrong when that relief is not otherwise statutorily authorized. Both Article 58b(c), UCMJ, and Article 75(a), UCMJ, only cover restoration of pay or property that was already owed to an accused and therefore are not applicable here. The fact that the Coast Guard administrative authority agreed to act upon the remedy and give Appellant his backpay does not alter whether this decision was within the legal purview of the lower court or shift our decision on the legal question in any way. The lower court erred in granting Appellant pay and allowances as a remedy for his illegal confinement

---

[7] *See also United States v. Herman*, No. ARMY 20041293, 2006 CCA LEXIS 430, at *5, 2006 WL 6624114, at *2 (A. Ct. Crim. App. Apr. 18, 2006) (unpublished) (ordering that the appellant receive forty-six days of pay and allowances to compensate for forty-six days of illegal post-trial confinement); *United States v. Powell*, No. ARMY 20040841, 2006 CCA LEXIS 446, at *4, 2006 WL 6624103, at *1 (A. Ct. Crim. App. June 22, 2006) (unpublished) (awarding thirty-one days of pay and allowances to compensate the appellant for thirty-one days of illegal post-trial confinement).

because Appellant was never entitled to such pay and allowances in the first place.

### III. Conclusion

The decision of the United States Coast Guard Court of Criminal Appeals is affirmed as to findings. The decision as to remedy is set aside. The record is returned to the Judge Advocate General of the Coast Guard for remand to the Court of Criminal Appeals for a new review under Article 66, UCMJ, 10 U.S.C. § 866 (2018), consistent with this opinion.

Judge MAGGS, dissenting.

In this appeal, the Court addresses Appellant's challenges to two aspects of the decision of the United States Coast Guard Court of Criminal Appeals (CGCCA). I agree with the Court's resolution of the first challenge but disagree with the Court's treatment of the second. Accordingly, I would affirm, rather than set aside, the decision of the CGCCA. I therefore respectfully dissent.

Appellant first challenges the CGCCA's denial of his request for appellate discovery. The CGCCA held that Appellant had not met his burden of showing that further discovery was warranted. *United States v. Lopez*, No. 1487, 2024 CCA LEXIS 278, at *15-16, 2024 WL 3369740, at *6 (C.G. Ct. Crim. App. July 11, 2024) (unpublished). The Court holds that a denial of appellate discovery is reviewable only for an abuse of discretion and that the CGCCA did not abuse its discretion in this case. I fully agree with the Court's reasoning and conclusion.

Appellant next challenges the relief that the CGCCA provided for his unlawful post-trial confinement. Article 66(d)(2), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(d)(2) (2018), authorizes a Court of Criminal Appeals to award "appropriate relief if the accused demonstrates error." Relying on this provision, the CGCCA held that Appellant should receive twenty-six days of pay and allowances. *Lopez*, 2024 CCA LEXIS 278, at *19, 2024 WL 3369740, at *7. The Court, however, holds that the CGCCA lacked authority to afford this relief. The Court then remands the case so that the CGCCA may perform a new sentence review to determine whether the CGCCA might provide other relief.

I disagree with this approach and would simply affirm the decision of the CGCCA even if the result is that Appellant retains twenty-six days of pay and allowances to which he *might not* be entitled. In my view, a remand in this case for a new sentencing review by the CGCCA is not justified. The only additional relief that Appellant seeks is to have his bad-conduct discharge set aside. The CGCCA, however, has already decided that "setting aside the bad-conduct discharge would be disproportionate." *Lopez,* 2024 CCA

LEXIS 278, at \*17, 2024 WL 3369740, at \*6. In fact, the CGCCA stated: "*[E]ven if . . . there is no other meaningful relief*, we decline to set aside the bad-conduct discharge." *Id.* at \*18, 2024 WL 3369740, at \*7 (emphasis added). This decision was fully within the CGCCA's discretion and authority to make under Article 66(d), UCMJ, and this Court has upheld decisions not to set aside punitive discharges in similar circumstances. *E.g.*, *United States v. Yunk*, 53 M.J. 145, 147 (C.A.A.F. 2000) (holding that the Court of Criminal Appeals did not abuse its discretion in affirming a bad-conduct discharge despite eleven days of "unduly restrictive" confinement because setting aside the bad-conduct discharge did not "reasonably appear to be proportionate or appropriate").

The Court, in my view, also should not decide in this case the question of whether the CGCCA had authority to provide pay and allowances as relief. The Government does not challenge the award of pay and allowances and indeed insists in its brief that "the CGCCA acted within its discretion by ordering [this] monetary credit." The award of pay and allowances also did not prejudice Appellant; he would benefit, not be harmed, by receiving the monetary relief. True, Appellant might have had a claim of prejudice if the CGCCA had ordered that he receive the pay and allowances *in lieu of other meaningful relief*. But as the above quotations make clear, the CGCCA did not award pay and allowances as a substitute for other relief. The Court therefore should reserve judgment on this important question until it is presented by a truly adversely affected party. *United States v. Chisholm*, 59 M.J. 151, 153 (C.A.A.F. 2003) (declining to decide an issue that was not presented in a genuinely "adversarial setting" on the ground that such a decision would be "premature").

For these reasons, I would affirm the decision of the United States Coast Guard Court of Criminal Appeals.

Judge JOHNSON, dissenting in part and in the judgment.

I join the Court's opinion except with respect to the scope of Article 66(d)(2), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(d)(2) (2018), in Part II.C. and Part III. The United States confessed error, conceded Appellant's "illegal post-trial confinement has been undeniable," and asks a federal court to apply the plain language of the statute to remedy its mistake. In my view, a Court of Criminal Appeals's (CCA) Article 66(d)(2), UCMJ, authority to award discretionary "appropriate relief" is a clear grant of authority to order pay and allowances for illegal post-trial confinement. Because I believe the plain meaning of Article 66(d)(2) allows for the relief the CCA ordered below, and it is not at odds with the *Manual for Courts-Martial, United States* (*MCM*), the UCMJ, or this Court's precedent, I respectfully dissent in part from Part II.C. and from the judgment, Part III.

## I. The lower court never ordered backpay

There is a threshold issue lurking in the language of Appellant's assigned error. Appellant asks this Court to answer, "[w]hether the lower court erred in ordering backpay for Appellant's illegal post-trial confinement."[1] "Backpay" is "[t]he wages or salary that an employee should have received but did not because of an employer's unlawful action in setting or paying the wages or salary." *Backpay*, *Black's Law Dictionary* (12th ed. 2024). As the Court discusses, Appellant was in a non-pay status, therefore he was not entitled to any wages or salary.

If the CCA had ordered backpay, I would agree with the Court that the lower court erred. However, the CCA never ordered backpay. The word "backpay" does not appear anywhere in its opinion. *See generally United States v. Lopez*, No. 1487, 2024 CCA LEXIS 278, 2024 WL 3369740 (C.G. Ct. Crim. App. July 11, 2024) (unpublished). Instead, the court held "appropriate relief" under Article 66(d)(2), UCMJ, would be "pay and allowances for each day of illegal

---

[1] *United States v. Lopez*, 85 M.J. 269 (C.A.A.F. 2024) (order granting review).

post-trial confinement." *Id.* at \*19, 2024 WL 3369740, at \*7. This relief—not backpay—was awarded.

In my view, whether the relief is properly viewed as "backpay" or as "pay and allowances" is dispositive of its legality. The Court and Appellant are correct that courts-martial, the Courts of Criminal Appeals, and this Court are not courts of equity. *United States v. Lopez*, __ M.J. __, __ (16) (C.A.A.F. 2025). However, money damages are "the traditional form of relief offered in the courts of law." *See, e.g.*, *Curtis v. Loether*, 415 U.S. 189, 196 (1974). Here, the CCA did not assert equitable powers.[2] It awarded the traditional legal relief of monetary damages under the plain language of a statute authorizing discretionary relief.

## II. The plain meaning of "appropriate relief" allows for the relief the CCA ordered

I start with the text. "It is a general rule of statutory construction that if a statute is clear and unambiguous—that is, susceptible to only one interpretation—we use its plain meaning and apply it as written." *United States v. Schmidt*, 82 M.J. 68, 73 (C.A.A.F. 2022). "[G]eneral words . . . are to be accorded their full and fair scope. They are not to be arbitrarily limited." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 101 (2012). Just as "statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils," statutory remedies may be drafted broadly to address manifold situations. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998).

In *United States v. Valentin-Andino*, this Court held "appropriate relief" under Article 66(d)(2), UCMJ, "is an

---

[2] Equitable remedies generally do not include monetary damages. An equitable remedy is "[a] remedy, usu[ally] a nonmonetary one such as an injunction or specific performance, obtained when available legal remedies, usu[ally] monetary damages, cannot adequately redress the injury." *Equitable Remedy*, *Black's Law Dictionary* (12th ed. 2024). There are narrow exceptions, such as in "action[s] for disgorgement of improper profits," but here, those exceptions do not apply. *Tull v. United States*, 481 U.S. 412, 424 (1987).

unambiguous word with an easily graspable meaning." 85 M.J. 361, 365 (C.A.A.F. 2025) (internal quotation marks omitted). "[D]ictionaries uniformly define 'appropriate' as that which is suitable or right for a particular situation." *Id.* Here, the CCA after "[c]onsidering all the circumstances," decided to affirm the bad-conduct discharge but award pay and allowances for the same duration as the illegal post-trial confinement. *Lopez*, 2024 CCA LEXIS 278, at *17-19, 2024 WL 3369740, at *6-7. In its view, pay and allowances were "suitable or right" for the twenty-six days of excess confinement. *Id.* at *19, 2024 WL 3369740, at *7; *Valentin-Andino,* 85 M.J. at 365. This Court need not disturb this conclusion.

If Congress wished to limit the CCA's authority under Article 66(d)(2), UCMJ, then it could have done so. "Congress knows how to limit the broad powers of the CCAs . . . ." *United States v. Kelly*, 77 M.J. 404, 408 (C.A.A.F. 2018). Elsewhere in the UCMJ, Congress has limited authority to award relief by expressly enumerating the available remedies. These limiting provisions suggest the broad language in Article 66(d)(2), UCMJ, was meant to be just that: broad. "The UCMJ is, after all, a 'uniform code.'" *United States v. Briggs*, 592 U.S. 69, 73 (2020) (holding "a natural referent for a statute of limitations provision within the UCMJ is other law in the UCMJ itself"). Here, the "natural referent[s]" for the scope of a CCA's remedial authority under Article 66(d)(2), UCMJ, are other remedial provisions in the UCMJ. For example, the newly enacted Article 66(d)(1)(B)(iii), UCMJ, lists every permutation of authority a CCA may exercise when it finds a conviction factually insufficient. *See* Article 66(d)(1)(B)(iii), UCMJ, 10 U.S.C. § 866 (d)(1)(B)(iii) (Supp. II 2019-2021) ("the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding"). Likewise, Article 59(b), UCMJ, provides for the scope of remedies available to any reviewing authority for errors of law. *See* Article 59(b), UCMJ, 10 U.S.C. § 859(b) (2018) (the reviewing authority may "approve or affirm, instead, so much of the finding as includes a lesser included offense"). Additionally, Article 60a(b)(2), UCMJ, allows convening authorities to "reduce, commute, or

suspend" certain sentences. *See* Article 60a(b)(2), UCMJ, 10 U.S.C. § 860a(b)(2) (2018).

In a similar manner, Congress specifically enumerated the remedies available under Article 58b(c), UCMJ, 10 U.S.C. § 858b(c) (2018), and Article 75(a), UCMJ, 10 U.S.C. § 875(a) (2018), which restore pay and privileges to which appellants would have been entitled absent the court-martial sentence. *See* Article 58b(c), UCMJ ("the member shall be paid the pay and allowances which the member would have been paid"); Article 75(a), UCMJ ("all rights, privileges, and property affected by an executed part of a court-martial sentence . . . shall be restored").[3]

By contrast, Congress provided no express list of remedies available to a CCA when determining an appropriate remedy under Article 66(d)(2), UCMJ. Congress's choice *not* to limit the remedies in Article 66(d)(2), UCMJ, contrasts sharply with the other provisions of the UCMJ addressing the scope of remedies for factual error, legal error, or a commander's discretionary clemency authority.

### III. Precedent supports the CCAs having authority to remedy post-trial error

I would take a broader view than the Court as to what Congress intended when creating Article 66(d)(2), UCMJ. This Court presumes "that Congress knows the law." *H.V.Z. v. United States*, 85 M.J. 8, 12 (C.A.A.F. 2024). For decades, this Court and the CCAs have exercised jurisdiction over allegations of post-trial delay and illegal post-trial punishment. Congress codified this practice in Article 66(d)(2), UCMJ.

One driving concern, repeatedly cited in these cases, is the *Feres* doctrine, which prohibits military prisoners from filing lawsuits against the federal government.[4] *Feres v.*

---

[3] Since the CCA awarded relief under Article 66(d)(2), UCMJ, rather than as a result of setting aside the sentence, neither Article 58b, UCMJ, nor Article 75, UCMJ, applies. To the extent the CCA relied upon Article 75, UCMJ, I agree with the Court that the CCA erred.

[4] "Prior to *Feres* there was precedent for holding individuals civilly liable for damages resulting from" illegal punishments. *United States v. Kinsch*, 54 M.J. 641, 646 (A. Ct. Crim. App.

*United States*, 340 U.S. 135 (1950); *Schnitzer v. Harvey*, 389 F.3d 200, 203 (D.C. Cir. 2004). As early as 1985, this Court recognized "no civil remedy exists for military members" subject to legal errors after their trial has ended. *United States v. Palmiter*, 20 M.J. 90, 93 n.4 (C.M.A. 1985). In response:

> this Court has *sub silentio* asserted its jurisdiction to determine if certain punishments violated the Eighth Amendment or Article 55. More recently, this Court has asserted its jurisdiction on direct appeal to consider whether posttrial conditions of confinement violated the Eighth Amendment or Article 55.

*United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001) (citations omitted) (listing cases throughout the 1990s). This Court and the CCAs have specifically recognized the *Feres* doctrine as a factor in asserting jurisdiction over post-trial errors and delay. *See, e.g.*, *id.* (holding this Court has jurisdiction to determine whether the execution of a sentence violates the Eighth Amendment or the UCMJ); *Kinsch*, 54 M.J. at 646 (providing sentence relief for unlawful post-trial punishment).[5]

In response, Congress codified the CCAs' authority to act on these issues in the new Article 66(d)(2), UCMJ. This provided CCAs the authority to award "appropriate relief" for errors or excessive post-trial delay after entry of judgment. National Defense Authorization Act for Fiscal Year

---

2000) (citing William Winthrop, *Military Law and Precedents*, 884 (2d ed., Government Printing Office 1920 (1895))).

[5] More recent cases have also noted the *Feres* doctrine in defense of precedent, *United States v. Jessie*, 79 M.J. 437, 447 n.1 (C.A.A.F. 2020) (Ohlson, J., dissenting) ("The majority seems to accept the CCA's claim that civilian federal courts can award damages to military prisoners. . . . this claim offers false hope given that the *Feres* doctrine prohibits lawsuits by military prisoners"), and recognizing legitimate reliance interests at risk by overturning precedent, *United States v. Pullings*, 83 M.J. 205, 220-21 (C.A.A.F. 2023) (Hardy, J., concurring in the judgment) ("some observers have implied that there might be reliance interests . . . due to the limitations of the *Feres* doctrine").

2017, Pub. L. No. 114-328, § 5330, 130 Stat. 2000, 2933 (2016).

In a different strand of cases involving a violation of appellants' Fifth Amendment rights, this Court has specifically addressed the appropriate remedy. "[T]he conversion formula set forth in the [*MCM*] for crediting improper confinement under R.C.M. 305(k) provide[s] an appropriate measure for crediting various types of punishment for purposes of former jeopardy, including confinement." *United States v. Josey*, 58 M.J. 105, 107 (C.A.A.F. 2003) (citing *United States v. Rosendahl*, 53 M.J. 344, 347-48 (C.A.A.F. 2000)).

Applying the presumption that Congress knows the law, it would know that this Court and the CCAs asserted jurisdiction over these traditionally civil claims because of the inability to address them in a civilian context. Congress would also know that this Court specifically endorsed the application of the conversion formula in Rule for Courts-Martial (R.C.M.) 305(k) to violations of servicemembers' Fifth Amendment rights.

The Court's decision potentially introduces a dichotomy of remedies available for violations of the same constitutional right: on one hand, servicemembers subject to former jeopardy punishment in violation of the Fifth Amendment are entitled to R.C.M. 305(k) credit, while on the other hand, servicemembers deprived of due process under the Fifth Amendment are not. This is inconsistent given the history of military courts awarding this relief. Where military courts have addressed illegal post-trial confinement, the CCAs have awarded the type of relief seen here. *See, e.g.*, *United States v. Hammond*, 61 M.J. 676, 680 (A. Ct. Crim. App. 2005). These decisions were occasionally the direct result of this Court remanding to the CCA for reconsideration of a sentence because of illegal post-trial confinement. *See, e.g.*, *United States v. Hammond*, 60 M.J. 457 (C.A.A.F. 2005) (summary disposition); *see also United States v. Gazurian*, 46 M.J. 299 (C.A.A.F. 1997) (summary disposition).

The monetary damages here are not equitable relief; neither Article 58b(c), UCMJ, nor Article 75(a), UCMJ,

6

applies; and nothing in the text of Article 66(d)(2), UCMJ, limits the CCA's remedial authority to the servicemember's current contract status.

I would hold the CCA acted within its authority by applying the plain language of Article 66(d)(2), UCMJ, and awarding relief it viewed as "appropriate." As a result, I would affirm the United States Coast Guard Court of Criminal Appeals.